UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MANUEL FIGUEREDO** § | | CIVIL ACTION NO: |
| § | | |
| *Plaintiff* § | | 4:21-cv-02433 |
| v. § | | |
| § | | |
| **GULF STREAM COACH, INC. AND** § | | |
| **HOLIDAY WORLD OF WILLIS, LLC** § | | |
| § | | |
| *Defendants* § | | **JURY TRIAL REQUESTED** |

## COMPLAINT

### I.   Parties

1. Plaintiff, MANUEL FIGUEREDO, is an individual that is now and has been at all times a citizen of the State of Texas.

2. Defendant, GULF STREAM COACH, INC., hereinafter "GULF STREAM" is a corporation authorized to do and doing business in the State of Indiana with its principal place of business located in Nappanee, IN, 4 and is the warrantor of the recreational vehicle that Plaintiff purchased and is a merchant in goods of the kind involved in this case.

   GULF STREAM agent for service of process is Rick Jones, 504 S. Oakland Avenue, Nappanee, IN 46550.

3. Defendant, HOLIDAY WORLD OF WILLIS, LLC, hereinafter "HOLIDAY WORLD" is a Texas citizen and a Texas limited liability company authorized to do and doing business in the State of Texas and is a seller of recreational vehicles in the State of Texas.

   HOLIDAY WORLD's agent for service of process is Michael Peay, 28909 Katy Fwy, Katy, TX 77494.

## II.  Jurisdiction

4. This court has jurisdiction over this lawsuit because the suit arises under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d).

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

## III.  Venue

5. Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

Venue is also proper in this district under Tex. Bus. & Com. Code §17.56. VENUE. An action brought under this subchapter may be brought:

   (1)  in any county in which venue is proper under Chapter 15, Civil Practice and Remedies Code;  or

   (2)  in a county in which the defendant or an authorized agent of the defendant solicited the transaction made the subject of the action at bar.

Venue is also proper in this district under Tex. Bus. & Com. Code §15.033. Breach of Warranty By Manufacturer:

A suit for breach of warranty by a manufacturer of consumer goods may be brought in any county in which all or a substantial part of the events or omissions giving rise to the claim occurred, in the county in which the manufacturer has its principal office in this state, or in the county in which Plaintiff resided at the time the cause of action accrued.

### IV.   Conditions Precedent

6.   All conditions precedents have been performed or have occurred.

### V.   Facts

#### A.   The Transaction

7.   On or about November 21, 2020, Plaintiff purchased a new 2021 GULF STREAM CONQUEST 6320D bearing VIN: 1FDXE4FNXMDC07550, hereinafter "CONQUEST," from HOLIDAY WORLD.

The "CONQUEST" was purchased primarily for Plaintiff's personal use. The sales contract was presented to Plaintiff at the dealership and was executed at the dealership.

8.   The sales price of the CONQUEST was $84,715.00. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See ***Hughes v. Segal Enterprises, Inc.*, 627 F. Supp. 1231, 1238 (W.D. Ark. 1986); *Chariton Vet Supply, Inc. v. Moberly Motors Co.*, 2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

#### B.   Implied Warranties

9.   As a result of the sale of the CONQUEST by Defendants to Plaintiff, an implied warranty of merchantability arose in the transaction which included the guarantee that the CONQUEST would pass without objection in the trade under the contract description, and that the CONQUEST was fit for the ordinary purpose for which such motor vehicles are purchased.

10.   Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

11. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the CONQUEST, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the CONQUEST had, in fact, repaired the defects.

12. Plaintiff's purchase of the CONQUEST was accompanied by express warranties offered by the Defendants, GULF STREAM and HOLIDAY WORLD, and extending to Plaintiff. These warranties were part of the basis of the bargain of Plaintiff's contract for purchase of the CONQUEST.

13. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the GULF STREAM's warranty booklet and owners manual. Also, the Defendant, GULF STREAM, continued to agree to extended its express warranty with the Plaintiff to cover defects that were discovered and tendered for repairs during the original factory warranty.

### D. Actionable Conduct

14. In fact, when delivered, the CONQUEST was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to:

    A.     WATER LEAKAGES;

  **B.**  **SLIDE-OUT DEFECTS;**

  **C.**  **DASHBOARD DEFECTS;**

  **D.**  **AND ANY OTHER DEFECTS OR NONCONFORMITIES OUTLINED IN THE REPAIR ORDERS.**

15. Since purchase, Plaintiff has returned his CONQUEST to the Defendants and its authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendants were given the opportunity to repair the CONQUEST, the more significant and dangerous defects were not repaired. Defendants failed to repair the subject vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the CONQUEST, continues to this day to exhibit some or all of the non-conformities and/or defects described herein.

16. The defects experienced by Plaintiff with the CONQUEST substantially impaired its use, value and safety.

17. Plaintiff directly notified the Defendants of the defective conditions of the CONQUEST on numerous occasions. Plaintiff notified Defendants, GULF STREAM and HOLIDAY WORLD, that he wanted a rescission of the sale of the CONQUEST but the Defendants have failed and refused to buy back Plaintiff's defective CONQUEST.

**VI. Causes of Action**

**COUNT 1: VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**

18. Plaintiff re-alleges and incorporates by reference herein each and every allegation set forth in the preceding paragraphs.

19. Plaintiff is a "consumer" as defined in the DTPA.

20. Defendants violated the following provisions of the DTPA:

    a. §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(6), §17.46(b)(7), §17.46(b)(9), §17.46(b)(12), §17.46(b)(13), §17.46(b)(20), §17.46(b)(22) and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiff;

    b. §17.50(2): breach of express warranty, as defined in §2.313 of the Tex Bus and Com Code (the warranty failed of its essential purpose and Plaintiff was deprived of substantial value of bargain because the defect was not corrected within reasonable time);

    c. §17.50(2): breach of the implied warranty to perform repairs in a good and workmanlike manner, as set forth in *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987);

    d. §17.50(2): breach of the implied warranty of merchantability as defined in §2.314 of the Texas Business and Commerce Code;

    e. §17.50(3): an unconscionable action or course of action as defined by §17.45(5).

21. Because of the inherent defects in the CONQUEST, which defects existed at the time the CONQUEST was sold, although not discovered until later, the CONQUEST was and is not merchantable in that it would not pass without objection in the trade under the contract description and it was and is not fit for the ordinary purpose for which such recreational vehicles are used by consumers. Furthermore, Defendants have failed to perform the repair work in a good and workmanlike manner. This conduct by Defendants constitute a breach of the implied warranties described above which breach is actionable under DTPA § 17.50(a)(2).

22. When the CONQUEST was not repaired, the express warranties that it would be and had been repaired were breached. Defendants' breach of the express warranties is actionable under DTPA § 17.50(a)(2).

23. Defendants' statements that the CONQUEST's defects would be and had been

repaired misrepresented the characteristics, uses, benefits, standard and quality of Defendants' services. For this reason, these representations were false, misleading and deceptive as defined in DTPA § 17.46(b)(5) and (7); and this conduct is actionable under DTPA § 17.50(a)(1).

24. The Defendants acts or practices in the selling and/or repairing of the CONQUEST to Plaintiff was unconscionable actions or courses of action because they took advantage of the Plaintiff's lack of knowledge, ability, experience, or capacity of the Plaintiff to a grossly unfair degree. For this reason, this transaction was unconscionable and is actionable under DTPA § 17.50(a)(3).

25. Plaintiff further contends that Defendants' violations of the DTPA were committed knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA entitling Plaintiff to seek civil penalties in trebling of their actual damages in accordance with the DTPA.

26. This conduct was a producing and/or proximate cause of actual damages to Plaintiff, as set forth below.

27. The limited remedy in Defendants' warranty fails of its essential purpose and deprives Plaintiff of the substantial value of the bargain because Defendants or its authorized dealerships did not correct the defects within a reasonable time. Tex. Bus. and Com. Code § 2.719. Therefore, any purported limitation of remedies is ineffective.

28. The exclusion of consequential and incidental damages is unconscionable and therefore unenforceable.

29. This conduct was a producing and/or proximate cause of actual damages to Plaintiff, as set forth below.

30. Any purported waiver or limitations of rights under DTPA by the Defendants is a violation of public policy under §17.42. WAIVERS: PUBLIC POLICY:

    (a) Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void; provided, however, that a waiver is valid and enforceable if:

        (1) the waiver is in writing and is signed by the consumer;

        (2) the consumer is not in a significantly disparate bargaining position; and

        (3) the consumer is represented by legal counsel in seeking or acquiring the goods or services.

    (b) A waiver under Subsection (a) is not effective if the consumer's legal counsel was directly or indirectly identified, suggested, or selected by a defendant or an agent of the defendant.

    (c) A waiver under this section must be:

        (1) conspicuous and in bold-faced type of at least 10 points in size;

        (2) identified by the heading "Waiver of Consumer Rights," or words of similar meaning; and

        (3) in substantially the following form:

"I waive my rights under the Deceptive Trade Practices-Consumer Protection Act, Section 17.41 et seq., Business & Commerce Code, a law that gives consumers special rights and protections. After consultation with an attorney of my own selection, I voluntarily consent to this waiver."

    (d) The waiver required by Subsection (c) may be modified to waive only specified rights under this subchapter.

31. Any purported limitation or reduction in the statute of limitations by the Defendants under DTPA must not be less than two years under the Texas Civil Practice and Remedies Code §16.070. Contractual Limitations Period:

(a) Except as provided by Subsection (b), a person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years. A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state.

(b) This section does not apply to a stipulation, contract, or agreement relating to the sale or purchase of a business entity if a party to the stipulation, contract, or agreement pays or receives or is obligated to pay or entitled to receive consideration under the stipulation, contract, or agreement having an aggregate value of not less than $500,000.

32. Under DTPA the statute of limitations is two years §17.565. LIMITATION:

**All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice. The period of limitation provided in this section may be extended for a period of 180 days if the Plaintiff proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the Plaintiff to refrain from or postpone the commencement of the action.**

33. As a direct and proximate result of Defendants' willful violation of their obligations under the DTPA, Plaintiff has suffered actual, consequential and incidental damages, including but not limited to money expended on the purchase of the CONQUEST, damages associated with the inconvenience suffered as a result of the complete failure of the to operate properly, the loss of use of the during the weeks it has been in the garage for repairs, the cost of repairs related to these defects, loss of wages, and attorneys' fees. Plaintiff has incurred and will continue to incur in order to protect their rights in this matter. The precise amount of damages is unknown at the present time but is estimated to be in excess of $350,000.00 and will be shown according to proof at trial. Attorneys' fees, loss of use, interest, and other damages continue to accrue.

34. Under the DTPA, Plaintiff is entitled to recover a sum equal to the aggregate amount

...

of costs and expenses, including attorney's fees, if Plaintiff prevails. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continues to incur legal fees, costs and expenses in connection therewith.

**COUNT 2: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

35. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

36. Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

37. Defendants, GULF STREAM and HOLIDAY WORLD, are "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

38. The CONQUEST is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiff in fact purchased it wholly or primarily for personal use.

39. The express warranties more fully described herein above pertaining to the CONQUEST, is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

40. The actions of the Defendants as herein above described, in failing to tender the CONQUEST to Plaintiff free of defects and/or refusing to repair and/or replace the defective CONQUEST tendered to Plaintiff constitute a breach of the written and implied warranties covering the CONQUEST and hence a violation of the Magnuson-Moss Warranty Act.

41. Plaintiff has performed all things agreed to and required of them under the purchase

agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

42. As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth herein above, Plaintiff has been damaged herein above in an amount in excess of $300,000.00 according to proof at trial.

43. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 3: LENDER LIABILITY**

44. Plaintiff re-alleges and incorporates by reference herein each and every allegation set forth in the preceding paragraphs.

45. Plaintiff is indebted to ACU TEXAS as a result of their purchase of the CONQUEST. Plaintiff is entitled to assert all claims and defenses stated above against ACU TEXAS as a defense to the debt.

**COUNT 4:  BREACH OF EXPRESS WARRANTIES**

46. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

47. Th Defendants' advertisements and statements in written promotional and other

-11-

materials contained broad claims amounting to a warranty that Plaintiff's CONQUEST or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendants issued an expressed written warranty which covered the CONQUEST and warranted that the CONQUEST, was free of defects in materials and work quality at the time of delivery.

48. As alleged above, the Defendants breached its warranties by offering for sale and selling as safe to Plaintiff a CONQUEST that was latently defective, unsafe, and likely to cause economic loss to Plaintiff.

49. In breach of the foregoing warranties, the Defendants have failed to correct said defects.

50. The damages Plaintiff has suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 5: BREACH OF IMPLIED WARRANTIES**

51. Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

52. The Defendants impliedly warranted that Plaintiff's CONQUEST which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

53. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants is unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects existed and might not be discovered,

if at all, until the CONQUEST, had been driven for a period longer than the period of the written warranty, and Defendants willfully withheld information about the defects from Plaintiff.

54. Because of the defects, Plaintiff's CONQUEST is unsafe and unfit for use and has caused economic loss to the Plaintiff. Therefore, the Defendants breached the implied warranty of merchantability.

55. The damages Plaintiff has suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 6: NEGLIGENCE AND NEGLIGENT MISREPRESENTATION**

56. Plaintiff re-alleges and incorporates by reference herein each and every allegation set forth in the preceding paragraphs.

57. The Defendants had a duty to Plaintiff to provide a product reasonably safe in design and manufacture, warn of dangerous defects, disclose adverse material facts when making representations of fact to Plaintiff and correct products which are defective.

58. The Defendants breached their duty of reasonably care and duty to disclose material adverse facts to Plaintiff by the following acts and omissions:

    a. Failure to design and manufacture a CONQUEST that did not harbor the defects alleged herein;

    b. Failure to notify Plaintiff of the dangerous and defective condition of the CONQUEST when Defendants knew or should have known of the dangerous and defective condition;

    c. Failure to fulfill its duty to disclose the material adverse facts as set forth above and otherwise failing to exercise due care under the circumstances; and

      d.      Failure to repair the CONQUEST in accordance with the express and implied warranties.

59.      The damages Plaintiff has suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 7:    BREACH OF CONTRACT

60.      Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

61.      Plaintiff would show that the actions and/or omissions of Defendants described herein above constitute breach of the sales contract, which proximately caused the direct and consequential damages to Plaintiff described herein below, and for which Plaintiff hereby sues.

62.      The damages Plaintiff has suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 8:    NEGLIGENT REPAIR

63.      Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

64.      On numerous occasions, Plaintiff delivered the CONQUEST to Defendants for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

65.      On each occasion that Plaintiff returned the CONQUEST for repairs, Plaintiff is

informed and believe, and thereupon allege, that Defendants attempted repairs of the CONQUEST pursuant to their obligations under the express and implied warranties. Defendants owed a duty of care to Plaintiff to perform repairs on the CONQUEST in a good and workmanlike manner within a reasonable time.  These Defendants breached this duty.

66. Defendants' attempted repairs of Plaintiff's CONQUEST were done so negligently, carelessly, and recklessly as to substantially impair the CONQUEST 's use, value, and safety in its operation and use.  At no repair attempt was Plaintiff's CONQUEST fully and completely repaired by Defendants, nor were many of the conditions of which Plaintiff complained fixed or significantly improved by Defendants' attempts at repair.  Nonetheless, each time Plaintiff picked up the vehicle after Defendants' repair attempts, Defendants represented to Plaintiff that the repairs were complete, and Plaintiff relied thereon.

67. As a direct and proximate result of Defendants' negligent failure to repair the CONQUEST within a reasonable time or within a reasonable number of attempts, Plaintiff was forced to drive a defective and dangerous CONQUEST in conducting their daily activities.  As a further direct and proximate result of Defendants' failure to repair the CONQUEST in a timely and workmanlike fashion, Plaintiff was forced repeatedly to take the CONQUEST in for further repair attempts and to leave the CONQUEST for long periods of time at great inconvenience to themselves, and Plaintiff sustained actual damages.

68. The damages Plaintiff has suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; attorney fees and damages to Plaintiff's health and well-being in the form of

emotional distress.

## VII. Economic and Actual Damages

69. Plaintiff sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

    a.. Out of pocket expenses, including but not limited to the money paid towards the note securing the vehicle;

    b. Loss of use;

    c. Loss of the "benefit of the bargain";

    d. Diminished or reduced market value; and

    e. Costs of repairs.

## VIII. Multiple Damages

70. The Defendants' conduct in violation of the DTPA was committed knowingly, as that term is defined in that Defendants had actual awareness of the *falsity, deception, or unfairness* of such acts, practices, and/or omissions.

71. Plaintiff further shows that such acts, practices, and/or omissions were committed "intentionally" in that Defendants specifically intended that Plaintiff act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

72. Therefore, Plaintiff is entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the amount of their economic damages.

## IX. Request for Rescission

73. Plaintiff seeks the remedy of rescission of the sales contract which is requested in the

following paragraph.

74. Plaintiff revokes his acceptance of the CONQUEST for the reason that its defects substantially impair its value to Plaintiff and acceptance was based on Plaintiff's reasonable reliance on the false representations and warranties of Defendants that the defects in CONQUEST would be repaired. Accordingly, Plaintiff seek a cancellation of the purchase transaction and an order of the court restoring to them the money obtained by Defendants as a result of the false representations and breaches of warranty set forth above. Plaintiff also seeks cancellation of the debt and now offers to return the CONQUEST to Defendants.

## X. Attorney Fees and Costs

75. Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

## XI. Prayer

76. For these reasons, Plaintiff prays for judgment against the Defendants for the following:

    a. For general, special and actual damages according to proof at trial;

    b. Rescinding the sale of the 2021 GULF STREAM CONQUEST 6320D bearing VIN: 1FDXE4FNXMDC07550 and returning to Plaintiff the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

c. For incidental and consequential damages according to proof at trial;

d. Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

e. Any diminution in value of the CONQUEST, attributable to the defects;

f. Past and future economic losses;

g. Prejudgment and post-judgment interest;

h. Damages for loss of use of vehicle;

i. Civil Penalties and/or Punitive damages;

j. Damages for mental anguish;

k. Attorney fees;

l. Costs of suit, expert fees and litigation expenses; and

m All other relief this Honorable Court deems appropriate.

## XII. Demand for Jury Trial

77. Plaintiff hereby demands a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539

| | |
|---|---|
| 1 | |
| 2 | Louisiana Bar No. 23017 |
|   | California Bar No. 268598 |
| 3 | P.O. Box 358 |
|   | Carencro, Louisiana 70520-0358 |
| 4 | rick@rickdaltonlaw.com |
|   | Tel. (337) 371-0375 |
| 5 | |
| 6 | ATTORNEY FOR PLAINTIFF |